**NEW CASTLE COUNTY, a political subdivision of the State of Delaware, and Department of Finance of New Castle County, Appellants Below, Appellants,**

v.

**The HISTORICAL SOCIETY OF DELAWARE, a nonprofit corporation organized under the laws of the State of Delaware; Board of Assessment Review of New Castle County; and Richard M. Lagergren, Mary D. Croze, Oliver F. Fonville, Harry A. Reynolds, and George B. Schreppler, Jr., Individually as Members of the Board of Assessment Review of New Castle County, Appellees Below, Appellees.**

Supreme Court of Delaware.

Submitted: July 17, 1990.
Decided: Sept. 21, 1990.

Dennis J. Siebold, Finance Legal Officer, New Castle Dept. of Finance, Wilmington, for appellants.

Daniel F. Wolcott, Jr., and Michael B. Tumas, Potter Anderson & Corroon, Wilmington, for appellees.

Before HOLLAND, J.; BERGER and JACOBS, Vice Chancellors (sitting by designation pursuant to Del. Const. Art. IV § 12).

JACOBS, Vice Chancellor:

9 *Del.C.* § 8104(a) exempts from assessment and taxation by any county or political subdivision of the State, real property that is owned and used by certain specified organizations and is not "held by way of investment." One of those listed organizations is The Historical Society of Delaware (the "Society"). The Society owns and operates a complex of buildings in downtown Wilmington, Delaware called "Willingtown Square." One of those buildings, the Coxe House, is currently being leased to a private law firm—a use that prompted New Castle County and its Department of Finance to add the Coxe House to its supplemental tax rolls. The Society appealed to the New Castle County Board of Assessment, which determined that the Coxe House was not being "held by way of investment," and, therefore, was exempt from County taxation under § 8104(a). The County appealed to the Superior Court, which upheld the Board of Assessment ruling. The County then appealed the Superior Court order implementing its ruling to this Court. We concur in the ruling of the Superior Court and, accordingly, affirm.

I.

The Society is a non-profit corporation founded in 1864 for the purpose of providing a greater understanding and appreciation of history, in particular the history of Delaware. In furtherance of that purpose, the Society collects, preserves, maintains, and interprets materials relating to the history of Delaware; exhibits its collections; conducts educational programs; and maintains a permanent library and museum sites. The Society was granted exempt status from real estate taxes in 1915, its properties have been exempt from state, county, and municipal taxes for the past seventy-five years.

In 1974, as part of Delaware's planned effort to celebrate the 200th anniversary of the signing of the Declaration of Independence, the Society and the City of Wilmington ("the City") agreed to establish an enclave of historical houses on the 500 block

of Market Street in downtown Wilmington. That enclave was to consist of four historically and architecturally significant buildings that the City would (and later did) move from their original sites to the open plaza opposite the Society's Town Hall museum. After the relocation and renovation process, the enclave consisted of the Ferris House, the Dingee House, the Simms House, and the Coxe House. All four structures were clustered around an open plaza now known as "Willingtown Square." [1]

In 1977, the City conveyed title to and operational control of the entire Willingtown Square site, including the buildings and the plaza, to the Society. That transfer had been contemplated from the outset of the project, because the City believed that it lacked the necessary experience and expertise to implement and maintain a historic center of this kind.

However, the title that the City conveyed to the Society was not absolute or unrestricted. The Deed from the City to the Society recited that the transfer was subject to the condition that the Society "maintain the historic structures on the property in their restored condition for historic and architectural purposes." That condition, which was stated in the Deed to be a covenant running with the land, was made expressly for the benefit of "the public, the City of Wilmington, and the United States of America." If the Society fails to maintain the structures in their restored condition for historical and architectural purposes, the City and the United States retain the right to reenter and to terminate all rights of the Society in the property. The undisputed effect of that condition and covenant, is that the Society holds Willingtown Square in perpetuity and is prohibited from selling the structures or the land.

Since 1977, the Society has maintained and preserved Willingtown Square in accordance with the terms of the Deed and the Society's own stated purposes. The buildings and the Square have been main-

tained, and enjoyed by the public, as one coherent physical unit. Numerous community groups have used the enclave for activities such as book and art sales and art exhibits. Every summer concerts are held there. In 1987, Willingtown Square was the site of a ceremony and reception commemorating the bicentennial of the ratification of the United States Constitution.

At the time of the hearing before the Board of Assessment, three of the Willingtown Square buildings were being used to House the Society's offices and a gift shop. The fourth building, Coxe House, was (and still is) being rented to a private law firm, because the Society has no current need for that space.

The rental income derived from Coxe House is used to defray the expenses associated with maintaining Willingtown Square, such as cleaning services, utilities, and building maintenance. That income does not inure to the benefit of any member of the Society, nor does it confer a profit upon the Society. Willingtown Square operates at a deficit: the cost of maintaining the complex exceeds the income derived from Coxe House. That deficit must be covered from the Society's general operating budget, consisting primarily of moneys raised privately from memberships, contributions, and endowments.

Based upon these facts the Superior Court found that the Society

> is using all four properties in the form of a living museum, much like the colonial buildings in Williamsburg. The purpose of the Society in renting [Coxe House] is not as an investment, but rather is an incidental part of maintaining these properties in their historical condition.

## II.

The issue presented on this appeal is whether the rental to a private firm of a portion of historic property that is otherwise being used for tax exempt purposes, requires that the rented portion be deemed

---

1. The Society played a significant role in the restoration and renovation, expending approximately $500,000 in private and public funds over the next several years to complete the project.

"held by way of investment", and therefore not exempt from taxation, under 9 *Del.C.* § 8104(a). We hold that it does not.

■■■ The proper test of whether a property is "held by way of investment" within the meaning of § 8104(a) is whether there is "... an intent to use the property for the purpose of securing profit to its owner." *Electra Arms Apartment and Medical Center Foundation, Inc. v. City of Wilmington,* Del.Supr., 254 A.2d 244, 248 (1969). The determinative factor is that of purpose. *Id.* Of necessity, such a determination is intensively factual and requires the Court to consider all relevant circumstances. In this case those circumstances compel the conclusion that the Society is not renting the Coxe House for the purpose of securing a profit.

First, the Society is not an entity organized for the purpose of making a profit. It is a charitable institution whose purpose is to enhance public appreciation of history, particularly the history of Delaware, and the Society's activities have been devoted to that purpose. The Society is, thus, distinguishable from the taxpayer in *Silverbrook Cemetery Co. v. Department of Finance,* Del.Super., 444 A.2d 267 (1982), which was a "for profit" cemetery corporation with equity holders, and whose property was held not exempt from taxation.

Second, although the rental of space in the Coxe House to a private firm would be a commercial use if such activity were viewed in isolation, when viewed in context that use is entirely consistent with the Society's purposes for holding and operating Willingtown Square. The Coxe House represents only a small portion of the overall space in Willingtown Square that is not currently needed for exhibitional, display, and other historic purposes. The purpose of the rental is to help defray the costs of maintaining and operating the Willingtown Square properties which, viewed collectively, are operated and maintained for a tax exempt purpose, namely, as a historical museum.

Third, the conditions under which the Society holds title to Willingtown Square (including Coxe House) legally preclude the Society from operating those properties for the purpose of securing a profit. Although the Society holds bare legal title to those properties, it does so not for its own benefit but for the benefit of others, *viz.,* "the public, the City of Wilmington, and the United States of America". Moreover, the Society is required by the instrument of conveyance to "maintain the historic structures on the property in their restored condition for historic and architectural purposes." And, whatever rights the Society may have in Willingtown Square are terminable if the Society fails to observe those conditions.

Therefore, in substance (even though not in form), the Society holds the properties (including Coxe House) "in trust" for others, for specified public and charitable purposes. The restrictions imposed by the 1977 Deed preclude the Society from making a profit by selling the Willingtown Square properties for a capital gain. That could not happen because the Society has no equity interest in Willingtown Square. That factor distinguishes this case from *Kappa Alpha Educational Foundation, Inc. v. Holliday,* Del.Supr., 226 A.2d 825 (1967), where a house rented by a foundation to a fraternity was found to be "held by way of investment" because, *inter alia,* the rent was used to pay down the mortgage on the property, thereby increasing the foundation's equity interest in that property.[2]

Fourth, and finally, the Society is not, in fact, securing a profit from the Coxe House rental. The rental revenues are exceeded by the Society's costs of operating the Willingtown Square properties. Those properties are operated at a deficit that must be made up by funds from the Society's operating budget.

Given the totality of the circumstances, the appellants' position could succeed only if § 8104(a) were interpreted to require (as appellants argue) that all of the exempted property must actually be used for an ex-

2. It is undisputed that no part of Willingtown Square is mortgaged.

empt purpose, and that to the extent any portion of such property is not, that portion becomes taxable. For that proposition the appellants rely upon *Kappa Alpha*, where this Court, holding that a house rented by a foundation to a fraternity was not "held by way of investment," observed that the property was "not *wholly* devoted to an exempt use under the statute." 226 A.2d at 827 (emphasis added).

The appellants read too much into the quoted language, the import of which was simply that *no* part of the property in that case was being used for a tax exempt purpose. Neither that language nor the reasoning of *Kappa Alpha* can fairly be read to validate the approach argued for by the appellants in this case. The test is whether the owner of the property is using the property with the intent to secure a profit. *Electra Arms*, 254 A.2d at 248. That a portion of that property is being devoted to a non-exempt use is a factor that certainly must be considered in determining intent. However, it is not the sole factor, and the weight to which it is entitled will depend upon the overall factual context. To hold

otherwise would force the Society to hold vacant and leave unproductive all of its space that is not needed for its current operations. That, in turn, would preclude that property from being used to defray a deficit the Society incurs to operate the properties *as a whole* for a tax exempt purpose. Such an interpretation of the statute would, in our view, be unwise and unsound, and we decline to adopt it.

In summary, we agree with the trial court's conclusion that the Coxe House is not being rented to secure a profit for the Society. It is being rented to help defray the costs of operating Willingtown Square, the larger complex of which the Coxe House is a part, for a concededly nonprofit, exempt purpose. Accordingly, the judgment of the Court below is affirmed.